UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KATHRYN KOSICH,

    Plaintiff,

v.                                                                     Case No. 8:21-cv-853-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's decision denying her application for Disability Insurance Benefits (DIB). For the reasons discussed below, the Commissioner's decision is reversed, and the case is remanded.

I.

The Plaintiff was born in 1981, has a Master's degree, served in the Army, and has past relevant work experience as a phlebotomist, automobile salesperson, and microbiology technologist. (R. 34, 44, 52, 78). In January 2017, the Plaintiff applied for DIB, alleging disability as of October 2010 due to depression and post-traumatic

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, replacing the former Commissioner, Andrew M. Saul. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Kijakazi is substituted for Mr. Saul as the Defendant in this suit.

stress disorder (PTSD). (R. 66). The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration. (R. 74–75, 89).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in July 2019. (R. 49–65, 117–18). In his subsequent decision, the ALJ found the Plaintiff's claims were barred by the doctrine of *res judicata* on the grounds that the SSA had previously denied an earlier DIB application by the Plaintiff which was predicated on the same facts and issues. (R. 93–97).

The Plaintiff sought review of the ALJ's ruling by the Appeals Council, which vacated the ALJ's decision and sent the case back to the ALJ for further proceedings. (R. 98–101). On remand, the ALJ convened another hearing in October 2020 (R. 222), at which the Plaintiff was accompanied by a non-attorney representative and testified on her own behalf (R. 29, 34–43). A vocational expert (VE) also testified. (R. 43–48).

In a decision issued in December 2020, the ALJ determined that the Plaintiff (1) had not engaged in any substantial gainful activity from her alleged onset date in October 2010 through her date last insured at the end of December 2015; (2) had the medically determinable impairments of PTSD, major depression, left knee arthralgia (subjective pain symptom) post anterior cruciate ligament repair, as well as mild degenerative disc disease at the T11/12 spine level, along with mild focal reversal of normal lordosis of the cervical spine; and (3) did not, however, have any severe impairments. (R. 16–22). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 22).

The Appeals Council denied the Plaintiff's request for review. (R. 1–4). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[2] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[3] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals any of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing 20 C.F.R. § 404.1520(a)(4);

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.
[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

*Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)).  Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five.  *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  If the Commissioner carries that burden, the claimant must then prove she cannot engage in the work identified by the Commissioner.  *Goode*, 966 F.3d at 1279.  In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant."  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

   A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing.  42 U.S.C. § 405(g).  Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence.  *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted).  Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citations and quotation marks omitted).  In evaluating whether substantial evidence bolsters the Commissioner's decision, a court "may not decide the facts anew, make credibility determinations, or re-weigh the

evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)).  While a court will defer to the Commissioner's factual findings, it will not defer to her legal conclusions.  *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

III.

The Plaintiff raises two challenges on appeal: (1) the ALJ erred at step two in assessing the severity of the Plaintiff's mental impairments and attendant symptoms; and (2) the ALJ improperly disregarded another agency's disability determination.  (Doc. 23).  After careful review of the parties' submissions and the record, the Court finds that the Plaintiff's first challenge has merit and that remand is warranted on this basis alone.

As noted above, the ALJ's task at step two is to gauge whether a claimant has a medically determinable impairment or combination of impairments that is severe.  *McCormick v. Soc. Sec. Admin., Comm'r*, 619 F. App'x 855, 857 (11th Cir. 2015) (per curiam) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)); *see also* 20 C.F.R. § 404.1520(a)(4)(ii).  An impairment is deemed to be non-severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).  The Eleventh Circuit has cautioned that the severity analysis at step two is merely a "threshold inquiry," under which only "the most trivial impairments [are] to be rejected."  *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (quoting

*McDaniel*, 800 F.2d at 1031); *see also Stratton v. Bowen*, 827 F.2d 1447, 1452 (11th Cir. 1987) (stating that "the application of a threshold severity regulation that is greater than *de minimis* is invalid under the terms of . . . the Social Security Act"). Although a claimant bears the burden of showing that she has a severe impairment or combination of impairments, *Schink*, 935 F.3d at 1265, that burden is a "mild" one, *Ward v. Astrue*, 286 F. App'x 647, 648 (11th Cir. 2008); *McDaniel*, 800 F.2d at 1031.

Where, as here, a claimant presents a "colorable" claim of a mental impairment, the ALJ must apply the regulatorily-mandated Psychiatric Review Technique (PRT) at step two. *Moore*, 405 F.3d at 1213–14 (citing 20 C.F.R. § 404.1520a). This technique requires an assessment of how the claimant's mental impairment affects four broad functional areas (known as the Paragraph B criteria): (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3).[4]

If, after applying the PRT, the ALJ determines that a claimant has no or only mild functional restrictions in these four domains, he will generally conclude that the claimant's mental impairment is not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* § 404.1520a(d)(1) (citation omitted). The Regulations require that the ALJ provide a specific explanation for his opinion, including the degree of limitation

---

[4] Prior to January 16, 2017, these four functional areas consisted of: "(1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation." 20 C.F.R., Part 404, Subpart P, App'x 1 (2016).

found in each area. *Id.* § 404.1520a(c)(4), (e)(4). The ALJ must then incorporate the results of the PRT into his findings and conclusions. *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (per curiam) (citing *Moore*, 405 F.3d at 1213–14).

In this case, Dr. Benjamin Gliko, a clinical neuropsychologist, and Dr. Kelly Gerhardstein, a psychologist, conducted consultative examinations of the Plaintiff in September 2014 and October 2014, respectively. (R. 535–46, 552–55). These examinations followed the Plaintiff's disclosures to her psychologist at the Department of Veterans Affairs (VA) that she was experiencing cognitive difficulties and had recently failed a licensing test. (R. 535, 552, 554).[5] The examinations were also conducted independently of later assessments of the Plaintiff rendered by other state agency medical and psychological consultants. *See* (R. 66–75, 78–90).

According to Drs. Gliko and Gerhardstein's review of the Plaintiff's medical records, the Plaintiff had previously been diagnosed with Major Depressive Disorder and Generalized Anxiety Disorder (R. 545, 553) and had confided that she was emotionally, physically, and sexually abused as a child by several of her family members, including her step-father, maternal uncle, and step-brother (R. 537, 553–54). She further advised that her family was reported to child protective services for neglect on multiple occasions. (R. 537). The Plaintiff told Dr. Gerhardstein in particular that she believed her history of sexual abuse impacted her functioning. (R. 553).

---

[5] The VA concluded that the Plaintiff was "unemployable" based on its determination that the Plaintiff should be considered totally and permanently disabled due to her service-connected disabilities under the applicable VA regulations. (R. 278, 417).

7

In addition to this information, the Plaintiff informed that after secondary school, she joined the military where she was sexually harassed, and that her sister with whom she was close subsequently passed way from cancer, which further contributed to the worsening of her mental health problems. (R. 537, 553–54).

During his examination of the Plaintiff, Dr. Gearhardstein administered certain objective testing which revealed, among other things, that the Plaintiff suffered from "moderately-severe levels of depression" and "severe levels of anxiety." (R. 552). Based upon these results and the other aspects of her evaluation, Dr. Gearhardstein opined that the Plaintiff's anxiety and depression were "significant" and described the Plaintiff's anxiety symptoms as having "progressed to a Generalized Anxiety Disorder in the last [six] months." (R. 554). Dr. Gearhardstein also concluded that "[a]lthough [the Plaintiff] ha[d] traditionally functioned quite well vocationally/academically, the long-term nature of her symptoms, her abuse history, [her] family history of mental illness, and her positive response to long-term therapy in the past suggest[ed] she [might] be a good candidate for referral to [a] mental health clinic." *Id.*

Dr. Gliko noted in his report that the Plaintiff had "prominent elevations" in areas of anxiety and depression, "with a particularly high level of physiological symptoms of anxiety endorsed." (R. 539). He further noted that the Plaintiff was "likely" to experience, *inter alia*, "symptoms of panic," as well as "vegetative symptoms of depression including fatigue and reduced energy," and added that "[t]his [was] consistent with information provided during the clinical interview and in treatment notes." *Id.* Dr. Gliko ultimately opined that while the Plaintiff was deemed

8

to have fully intact cognitive functioning in the past and had previously obtained a Master's degree (R. 536–39), her severe major depressive disorder and generalized anxiety disorder "substantially limit[ed her] function[ing] in the following major life activities: reading, concentrating, and thinking" (R. 539). As a result, Dr. Gliko recommended that the Plaintiff continue to participate in psychotherapy to better manage her anxiety and that she either be afforded fifty percent additional time on her licensing test or be granted one hundred percent additional "off the clock" break time, "during which she could apply strategies to reduce her anxiety." (R. 539–40).

In his decision, the ALJ found that the Plaintiff had the medically determinable impairments of PTSD and major depression but that she "did not have a severe impairment or combination of impairments." (R. 16). In arriving at this determination, the ALJ applied the PRT to the evidence of record, which included treatment notes from the above-referenced VA medical facility. (R. 17–18) (citations omitted). Those materials reflected that the Plaintiff had been prescribed a regimen of psychotropic medications which "improved" her mood, and also documented the results of a mental status exam conducted in February 2016, which was two months after the Plaintiff's date last insured. *Id.* (citations omitted). The ALJ found based upon his analysis that the Plaintiff had only a mild limitation in interacting with others and no limitations in the remaining three areas of understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting and managing herself. (R. 19–20).

The ALJ then went on to explain that given the evidence described in his decision, he accorded "little weight" to the opinions of the state agency consultants who evaluated the Plaintiff after the examinations performed by Drs. Gearhardstein and Gliko, and who found the Plaintiff to have a severe psychological impairment. (R. 20) (citing R. 66–75, 78–90). Significantly, the ALJ did not mention the findings made by Drs. Gearhardstein and Gliko relative to the Plaintiff's mental health issues.

The Plaintiff now asserts that the ALJ erred by failing to address these opinions. (Doc. 23 at 21–22). The Court agrees. As stated, the ALJ did not offer any explanation at all regarding whether and how he weighed Drs. Gearhardstein and Gliko's assessments in reaching his severity determination. This oversight is particularly notable given the Plaintiff's documented mental impairments, which—according to Dr. Gliko—"substantially limit[ed]" her capacity to function in the "major life activities" of "reading, concentrating, and thinking" and which necessitated certain accommodations. The Court is therefore unable to engage in a meaningful review of the ALJ's step two finding that the Plaintiff's psychological problems did not have anything more than a *de minimis* impact on her ability to work. *Schink*, 935 F.3d at 1265; *see also Delia v. Comm'r of Soc. Sec.*, 433 F. App'x 885, 887 (11th Cir. 2011) (explaining that "[o]nly slight, trivial impairments that would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience" should be found to be non-severe at step two) (internal quotation marks omitted); *Albers v. Comm'r of Soc. Sec.*, 2016 WL 4162771, at *2 (M.D. Fla. Aug. 4, 2016) (observing that "an impairment or combination of impairments is

non-severe only when it results in a slight, trivial[,] or meaningless effect on an individual's ability to work"). As a result, remand is required. *See Beard v. Comm'r of Soc. Sec.*, 2022 WL 4310011, at *5–6 (M.D. Fla. Sept. 19, 2022) (reversing and remanding a case where the ALJ failed to address a medical opinion at step two); *see also Evans v. Comm'r of Soc. Sec.*, 2016 WL 7674868, at *7 (M.D. Fla. Dec. 19, 2016) ("The weighing of treating, examining, and non-examining physician's opinions is an integral part of steps two, three, four, and five of the sequential evaluation process."), *report and recommendation adopted*, 2017 WL 88978 (M.D. Fla. Jan. 10, 2017).

The Commissioner does not contend that any error committed by the ALJ at step two was harmless. Nor could she validly do so. Ordinarily, an ALJ's mistake at step two can be cured at step four because the ALJ must evaluate all of a claimant's impairments—both severe and non-severe—at that stage. *Schink*, 935 F.3d at 1268 (noting that an ALJ's finding that a claimant's impairment was non-severe at step two could be rendered harmless if the ALJ "duly considered [that] impairment when assessing [the claimant's] RFC" at step four); *Leon v. Saul*, 2020 WL 4048211, at *3 (M.D. Fla. July 20, 2020) ("Even if the ALJ erred by finding [the claimant's] colitis a non-severe impairment [at step two], such error [was] harmless because the ALJ considered [the claimant's] colitis at step four[.]") (citing *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011)). The problem here though is that the ALJ did not proceed beyond step three or otherwise rectify his step two error. Thus, the ALJ's

failure at step two to address the findings of Drs. Gearhardstein and Gliko regarding the Plaintiff's mental health issues was not harmless.[6]

In light of this finding, the Court need not resolve the Plaintiff's remaining challenge. *See McClurkin v. Social Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. Sept. 4, 2015) (finding there was no need to analyze any additional issues because the case was reversed due to other dispositive errors); *Demenech v. Sec'y of Dep't of Health & Hum. Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (declining to address the claimant's remaining arguments due to the conclusions reached in remanding the action); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (stating that where remand is required, it may be unnecessary to review other claims raised) (citations omitted). On remand, however, the ALJ must consider all of the record evidence in accordance with the governing case law and the applicable regulatory provisions in evaluating the Plaintiff's impairments. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (stating that the ALJ must reassess the entire record on remand).

### IV.

Based upon the foregoing, it is hereby ORDERED:

1. The Commissioner's decision is reversed, and the case is remanded for further proceedings before the Commissioner consistent with this Order.

---

[6] Nothing in the Court's ruling should be construed as a determination that the Plaintiff has a severe impairment based upon Drs. Gearhardstein and Gliko's opinions or that she is disabled. Those matters are left for the Commissioner to decide on remand.

12

2.	The Clerk of Court is directed to enter Judgment in the Plaintiff's favor and to close the case.

3.	The Court reserves jurisdiction on the question of attorney's fees and costs pending a further motion that conforms to the District's Standing Order. *See In re: Administrative Orders of the Chief Judge*, No. 3:21-mc-1-TJC (Doc. 43) (Dec. 7, 2021).

SO ORDERED in Tampa, Florida, this 28th day of November 2022.

*Christopher P. Tuite*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record